Connolly, Thomas E., J.
On June 28, 2010, this matter came on for a non-evidentiary hearing on the defendant, Chimezie Akara’s Motion for New Trial. The defendants, Chimezie Akara and Andre Green (Suffolk Criminal No. 2003-11298) were tried together on ten separate counts against each defendant, including murder in the first degree.[1] The juiy found the defendant Chimezie Akara guilty on the following nine counts:
001-Armed Assault to Murder, Firearm
Ch. 265, § 18(b)
002-Assault with a Dangerous Weapon
Ch. 265, §15B(b)
003-Armed Assault to Murder, Firearm
Ch. 265, § 18(b)
004-Assault and Batteiy with a Dangerous Weapon
Ch. 265, §15A(b)
005-Murder, First Degree
Ch. 265, §1
006-Armed Assault to Murder, Firearm Ch. 265, § 18(b)
007-Assault and Battery with a Dangerous Weapon
Ch. 265, §lSA(b)
008-Possession/Carrying firearm without a License
Ch. 269, § 10(a)
010-Possession of Ammunition without a FD Card
Ch. 269, § 10(h)
The basis of this motion for new trial is that a witness at the defendant’s murder trial, namely Julian Greene, has allegedly recanted his trial testimony by swearing in an affidavit that inter alia, “I have always felt bad about the mistaken testimony that I gave” (p. 3 of affidavit of Julian Green, dated March 25, 2010, given at the Plymouth House of Correction while Green was awaiting his trial for murder in Barnstable Superior Court-Cr. No. 2008-00003). Julian Green states that when he gave his “mistaken testimony” he was simply trying to help his cousin, namely the co-defendant, Andre Green. Julian Green admitted at trial that he lied in part in his initial statements to the Boston Police, however he strongly affirmed at trial that the testimony that he now wishes to recant was true. Counsel for the defendant, Akara, had also presented a tape recorded conversation which Julian Green’s present appellate counsel, Randy Gioia, had with Julian Green at Plymouth County Correction Center on March 4, 2010 wherein Julian Green recanted his trial testimony.
The recanting witness, Julian Green was born on June 6, 1988, which would make him 18 years old when he testified at trial in this case and approximately 22 years old when he signed his “recanting affidavit”, some four years after the return of the guilty verdicts in this case.
In the interim, the recanting witness, Julian Green, had been indicted for murder, second degree, assault with a dangerous weapon and firearm charges on January 18, 2008 in Barnstable Superior Court. Green’s murder case was set to be tried at Barnstable in July 2010. In the event that Julian Green was convicted it is reasonable to infer that Julian Green would be incarcerated at some time in the same prison system as Chimezie Akara and that Akara, either individually or by some other prisoner at Akara’s request, may cause serious physical harm or death to Julian Green for testifying against Akara at trial. Accordingly, it can be reasonably inferred by the Court that Julian Green was attempting to have Akara’s convictions reversed, in order not to incur Akara’s wrath when Julian Green himself is imprisoned in the same correctional system.
Julian Green himself was convicted of murder, second degree and other assault and weapon charges on July 23, 2010 in Barnstable Superior Court, and was sentenced to life in prison, ch. 265, §1, §2.[2], [3]
*515 DISCUSSION
A motion for new trial is addressed to the sound discretion of the trial judge. Any recantation of testimony by a witness must be examined carefully by the court as to the credibility of the witness’s new testimony.[4] A motion judge, if, as here, he was the trial judge, may factor into the weighing what the judge learned about the case and the witness/affiant at trial. Commonwealth v. Ortiz, 393 Mass. 523, 536-37 (1984); Commonwealth v. Hammond, 50 Mass.App. 171, 177 (2000). This judge, who was the trial judge, has read copies of all submissions by counsel, including their attachments, the complete trial transcript of the testimony of Julian Green, the Court’s own trial notes, Julian Green’s recantation affidavit and the transcript of his conversation with Attorney Randy Gioia at the Plymouth House of Correction on March 4, 2010. Julian Green’s affidavit directly contradicts what he told the police, what he testified to before the grand juiy and what he testified to at trial. His affidavit was signed some four years after Andre Green was convicted and some four months before his own murder case was to commence. This case is somewhat similar to the case of Commonwealth v. Rebello, 450 Mass. 118, 124, n.6 (2007), where the court, in discussing a witness’s recantation found “little question that it was an effort to improve his lot among some of his fellow inmates rather than a genuine desire to tell the truth.”
This judge finds the witness Julian Green’s “recantation affidavit” and recorded statement not to be credible.
For these reasons and the reasons stated in the Commonwealth’s Opposition to the Defendant’s Motion for a New Trial, the court denies this motion.
ORDER
After hearing, defendant Chimezie Akara’s Motion for a New Trial is DENIED.

 Due to the notoriety of this case, it took 10 days to impanel a juiy by individual voir dire. The trial lasted four full weeks and the juiy deliberations lasted 10 more full days.

 At the time of the writing of this Memorandum and Order, Julian Green and Andre Green are incarcerated at the maximum security Sousa-Baranowski State Prison and the defendant, Chimezie Akara is incarcerated at Cedar Junction State Prison.

 Julian Green still has two other matters awaiting trial in Barnstable Superior Court. They are as follows:
A. Barnstable Criminal No. 2007-00140
001-Armed Assault to Murder, ch. 265, § 18(b)
002-Assault and Battery with a Dangerous Weapon, ch. 265, §15A(b)
003-Aggravated Assault and Batteiy with a Dangerous Weapon, Ch. 265, §15A(c)
004-Assault and Batteiy, ch. 265, §13A(a)
B. Barnstable Criminal No. 2009-00108
001-Assault and Baffeiy on a Correctional Officer, ch. 127, §38B

 As the Court in Commonwealth v. Robertson, 357 Mass. 559, 562 (1970), stated: “Upon a motion for a new trial based on recantation by a material witness, the duty of the trial judge is to give grave consideration to the credibility of the witness’s new testimony. However, it cannot be said as a matter of law that the judge is required to grant a new trial simply on the basis of recantation, and the motion is addressed to his sound judicial discretion . . . The disposition of motion for new trial on the ground of newly discovered evidence rests in the sound judicial discretion of the trial judge.’ . . . The possibility that the recantation or newly discovered evidence might affect the result of the trial does not necessarily require the granting of a new trial . . . Certainly the trial judge is in a far better position to pass upon the merits of that evidence which is labeled ‘newly discovered’ than are we . .. Finally, the ‘fundamental test in determining the correctness of the action of a trial judge in denying a motion for a new trial on the ground of newly discovered evidence is that the decision of the judge is not to be reversed unless a survey of the whole case shows that his decision, unless reversed, will result in manifest injustice.’ ... ‘If the rule were otherwise, the right of a new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court.’”